SO ORDERED.

SIGNED this 14th day of December, 2020.



*Dale L. Somers*
Dale L. Somers
United States Chief Bankruptcy Judge

Designated for online use, but not print publication

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:<br><br>**The Young Men's Christian Association of Topeka, Kansas,**<br><br>Debtor. | Case No. 20-20786<br>Chapter 11 |

**Memorandum Opinion and Order**
**Addressing Procedures for Plan Voting**

The matter before the Court is the Debtor's Motion under Rule 3017(e) of the Federal Rules of Bankruptcy Procedure to Determine Adequacy of Procedures for Plan Voting ("Motion").[1] Debtor's primary obligations are under industrial revenue bonds issued by the City of Topeka, Kansas to finance construction and equipping of Debtor's facility. The dispute concerns

---

[1] Doc. 118.

whether bondholders or the indenture trustee under the bonds are entitled to vote on Debtor's proposed Chapter 11 plan, and, if the bondholders are entitled to vote, whether Debtor or the indenture trustee has the obligation to provide notice and a ballot to the individual bondholders. For the reasons examined below, the Court concludes that bondholders have a right to vote and that Debtor has the obligation to provide them notice and a ballot.

## I. Factual Background

Debtor, the Young Men's Christian Association of Topeka, Kansas ("YMCA"), operates a gym facility and offers classes for preschool and school age children, after school activities, a full day kid's program, and youth and summer camps. In 2000, the City of Topeka ("City") issued Economic Refunding Revenue Bonds, Series 2000A, dated August 1, 2000 for the purpose of construction, furnishing, and equipping the YMCA's 38,000 square foot facility in southwest Topeka. In 2011, Series 2011 A Bonds (the "Bonds") in the principal amount of $7,055,000 were issued for the purpose of refunding and redeeming the outstanding Series 2000A bonds.

The Bonds were issued in accordance with K.S.A. 12-1740, *et seq.*, the Kansas Economic Development Revenue Act. It empowers a city to "issue revenue bonds, the proceeds of which shall be used for the purpose of paying all or part of the cost of purchasing . . . facilities for . . . commercial . . .

development"[2] and to enter into leases for such facilities. Under this industrial revenue bond ("IRB") financing arrangement,[3] the City is the fee holder of Debtor's facility, and the YMCA leases the facility from the City. The Bonds are funded by "lease" payments made by the YMCA to the City under an agreement dated September 1, 2011. CoreFirst serves as Indenture Trustee,[4] and its relationship to Debtor and the bondholders is stated in the Trust Indenture. Neither Debtor nor the Indenture Trustee have knowledge of the names and addresses of the holders of beneficial interests in the Bonds.

In last several years, the YMCA has experienced a drop of over 50% in annual revenue. On May 21, 2020, the YMCA filed for relief under Subchapter V of Chapter 11. The schedules list CoreFirst as having a claim for $5,260.000, partially secured by Debtor's facility, whose construction was funded through the Bond issuance. Neither the record holders of the Bonds nor the holders of the beneficial interests in the Bonds are listed as creditors.

---

[2] K.S.A. 12-1740.

[3] A copy of the Bond form is attached to the Motion. Doc. 118, 9-14. The additional controlling documents were filed as Doc. 142. They are: Official Statement; Assignment of Lease; Continuing Disclosure Statement; Lease; and Trust Indenture.

[4] An indenture trustee is defined by 11 U.S.C. § 101(29) to mean a "trustee under an indenture." Subsection (28) defines an indenture to mean "a mortgage, deed of trust, or indenture under which there is an outstanding security. . . constituting a claim against the debtor, a claim secured by a lien an any of debtor's property, or an equity security of the debtor."

CoreFirst, as "Bond Trustee for Economic Development Refunding Bonds, Series 2011A," filed a proof of claim for $5,774,391.48, stating that the amount of the secured portion is currently unknown and will be settled when the Court determines the value of the facility.[5]

On August 18, 2020, Debtor filed its Subchapter V plan of reorganization.[6] Service was made on the Indenture Trustee, but not those with interests in the Bonds.[7] The Court set September 30, 2020 as the deadline for objections to the plan and October 9, 2020 as the date for the confirmation hearing.[8] The plan treats Debtor's obligations under the Bonds as partially secured claims, in accord with bankruptcy case law treating Kansas industrial revenue bond transactions as secured loans, rather than as true leases.[9] Under this approach, the bondholders are secured creditors of Debtor. There has been no objection to this treatment. The plan provides that the bondholders, represented by CoreFirst as Bond Trustee, have a secured

---

[5] Proof of Claim 3-2.

[6] Doc. 101.

[7] *See* Doc. 107.

[8] Doc. 106. That hearing date has been continued.

[9] *Id.* 7-8 (citing *In re KAR Dev. Ass'n, L.P.*, 180 B.R. 597 (Bankr. D. Kan. 1994), *aff'd City of Olathe v. KAR Dev. Ass'n, L.P. (In re KAR Dev. Ass'n, L.P.)*, 180 B.R. 629 (D. Kan. 1995).

4

claim for $1,635,000, the alleged value of the facility, and an unsecured claim for the remaining balance owed.

On September 21, 2020, Debtor filed its Motion to determine the adequacy of procedures for plan voting.[10] It states that Debtor's counsel had been put on notice by one of the bondholders that it, as well as other bondholders, expect to vote on Debtor's reorganization plan. The bondholder challenged Debtor's failure to determine the identity of beneficial owners of the Bonds and to provide them notice of the plan and a ballot. Debtor requested the Court to affirm Debtor's position that under the Bond documents, notice to CoreFirst, the Indenture Trustee, provides adequate notice to the bondholders and that the Indenture Trustee, not individual bondholders, is entitled to ballot the plan.

CoreFirst responded that while the Trust Indenture delegates to it the right to file a proof of claim and to enforce and prosecute the claims on the

---

[10] Doc. 118. The Motion states it is brought under Federal Rule of Bankruptcy Procedure 3017(e). Rule 3017(e) addresses the hearing on the adequacy of a disclosure statement in a Chapter 11 case. However, that Rule does not apply in this case, since 11 U.S.C. § 1125, which requires the filing of a disclosure statement, does not apply in Subchapter V cases, unless ordered by the Court. 11 U.S.C. § 1181(b). There has been no such order in this Subchapter V case. Local bankruptcy rule 3017.2.1, providing that the Court shall fix hearing dates in cases where there is no disclosure statement, therefore is applicable. It does not address notice to creditors.

Bonds, it does not delegate the right of the bondholders to vote on the plan.[11] The United States Trustee ("UST)") also responded, arguing that the bondholders are creditors with rights to notice and vote.[12]

On October 9, 2020, the date originally set for the confirmation hearing, the Court conducted a telephonic status conference on Debtor's Motion and the objections. The Court allowed participation by counsel for Nuveen Asset Management, LLC ("Nuveen"), who had contacted Debtor's counsel on behalf of a bondholder. Debtor was given two weeks to respond to the objections to the Motion. Debtor filed a supplemental memorandum in support of the Motion, in which it provided further support for its position that bondholders are not entitled to notice or to vote and, in addition, argued that if bondholders have such rights, CoreFirst as Indenture Trustee, not the Debtor, is obligated to provide notice and tabulate votes.[13] CoreFirst filed a brief responding to Debtor's new position.[14] Nuveen filed a brief opposing Debtor's motion.[15]

---

[11] Doc. 133.

[12] Doc. 140.

[13] Doc. 151.

[14] Doc. 152.

[15] Doc. 153.

## II. Analysis

### A. The Beneficial Owners of the Bonds are Entitled to Vote to Accept or Reject Debtor's Reorganization Plan.

Debtor's first argument is that the Indenture Trustee, not the bondholders, is entitled to notice of the proposed plan and has the right to accept or reject the plan on behalf of the bondholders. The Court rejects this argument.

Section 1126[16] applies in Subchapter V cases.[17] It provides that "[t]he holder of a claim or interest allowed under section 502 of this title may vote to accept or reject a plan." The holder of a claim is the one who has a "right to payment."[18] Under the treatment of the IRB bond transaction as a secured loan adopted by Debtor in its plan, the bondholders are creditors of Debtor. Section 1126 grants them the right to vote.

The fact that the Indenture Trustee filed a proof of claim on behalf of the bondholders does not detract from their creditor status. This authority is consistent with Rule 3003(c)(1),[19] which provides "any creditor or indenture

---

[16] 11 U.S.C. § 1126. Future references in the text to Title 11 shall be to the section number only.

[17] See 11 U.S.C. §1181.

[18] 11 U.S.C. § 101(5).

[19] Fed. R. of Bankr P. 3003(c)(1). Future references in the text to the Federal Rules of Bankruptcy Procedure shall be to the rule number only.

7

trustee may file a proof of claim." When addressing § 1126, commentators agree that the bondholders retain the right to vote and an indenture trustee is not entitled to vote on behalf of bondholders. One treatise states,

> If a trustee holds a claim in its own name, and not for the individual beneficiaries of the trust, it is the trustee that is entitled to vote the claim. Although a indenture trustee may file a proof of claim in behalf of bondholders for whom it is trustee, it may not vote such claim unless specifically authorized under the terms of the trust instrument.[20]

Another treatise states, "Although Bankruptcy Rule 3003(c)(5) specifically authorizes an indenture trustee to file a proof of claim on behalf of all known or unknown security holders pursuant to the trust, the indenture trustee is not the holder of a claim, and, accordingly, is not entitled to accept or reject a plan."[21]

In this case, the Trust Indenture specifically authorizes the Indenture Trustee to file a proof of claim on behalf of the bondholders. Section 1001(a) of the Trust Indenture provides the Indenture Trustee "may file a proof of claim or such other documents as may be necessary and advisable in order to have

---

[20] 7 *Collier on Bankruptcy,* ¶ 1126.02[2] (Richard Levin & Henry J. Sommer eds.-in-chief, 16th ed. 2020).

[21] 6 William L. Norton, Jr., and William L. Norton III, *Norton Bankruptcy Law & Practice 3d*, § 110:20 (Thomson Reuters 2020).

8

the claims of the Trustee and the Owners of the Bonds relative to the Bonds, or the obligations relating thereto, allowed in any judicial proceeding."[22]

Debtor relies upon this authority of the Indenture Trustee to file a proof of claim and upon other provisions of the bond documents to argue that the Indenture Trustee is vested with sole authority vote to accept or reject the plan. For example, Debtor notes that the Bonds provide,

> The Owner of this Bond shall have no right to enforce the provisions of the Indenture or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Indenture, or to institute, appear in or defend any suit or other proceedings with respect thereto, except as provided in the Indenture.[23]

Further, section 902 of the Trust Indenture provides,

> If any Event of Default shall have occurred and be continuing, the Trustee shall pursue and exercise any available remedy at law or in equity by suit, action, mandamus or other proceeding or exercise one or more other rights and powers conferred by this Article as the Trustee . . .shall deem most expedient in the interest of the Bondowners to enforce the payment of the principal of, premium, if any, and interest on the Bonds then Outstanding, and to enforce and compel the performance of the duties and obligations of the Issuer as herein set forth.[24]

---

[22] Doc. 142, 253.

[23] Doc. 118, 12.

[24] Doc. 142, 250.

9

Section 903 then provides that the Indenture Trustee shall bring any suit or proceeding in its name as Trustee without the necessity of joining any bondowners as plaintiffs or defendants.[25]

Debtor argues that these provisions constitute a "no action" clause whereby bondholders waived their right to object to a plan.[26] Most of the cases cited by Debtor do not involve voting on plan confirmation.[27] The one case which did arise in that context is clearly distinguishable because the controlling documents specifically addressed waiver of rights if a Chapter 11 case were filed.[28]

None of these provisions in the Bond documents address participation in a bankruptcy claim process; there has been no express waiver of the right to vote, and the Court declines to find an implied waiver. Although not directly applicable to this transaction,[29] the Model Simplified Indenture form

---

[25] *Id.*

[26] Doc. 151, 15.

[27] *E.g., In re Innkeepers U.S.A. Trust*, 448 B.R. 131, 144 (Bankr. S.D.N.Y. 2011) (securitization trust certificate holder lacked standing to object to sale bid procedures order).

[28] *In re Ion Media Networks, Inc,*, 419 B.R. 585, 597 (Bankr. S.D.N.Y. 2009).

[29] The Model Simplified Indenture form was drafted for use in transactions subject to the Trust Indenture Act of 1939, but this IRB transaction is within one of the Act's statutory exemptions. Doc. 142, 5.

10

provides that an indenture trustee's authority to file a proof of claim on behalf of bondholders does not authorize the trustee to accept or consent to any plan of reorganization or to vote to the claim of any bondholder in any proceeding.[30] In *Allied Owners' Corp.*, the Second Circuit Court of Appeals held that a trustee, endowed with broad authorities regarding bonds secured by a mortgage, was not entitled to vote on behalf of bondholders in a reorganization case, since there was nothing in the relevant documents indicative of such authority.[31] *Allied* has been interpreted to stand for the rule that "corporate trustees, while permitted to file proofs of claim, are not entitled to vote on the plan or reorganization unless the trust indenture specifically authorizes them so to do."[32] Here Debtor has not cited to any provision of the Trust Indenture, or any other of the relevant documents, granting the Indenture Trustee specific authority to vote on behalf of the bondholders. Debtor cites no cases which hold in circumstances similar to this case that the Indenture Trustee is vested with authority to vote.

Finally, Debtor argues that § 502(b)(1) may limit or restrict the rights of the individual bondholders from exercising their right to vote in this case.

---

[30] Revised Modified Simplified Indenture, 55 Bus. Law. 115 (2000).

[31] *In re Allied Owners' Corp.*, 74 F.2d 201, 203 (2d Cir. 1934).

[32] *In re Prudence Co.*, 22 F. Supp. 264, 266 (E.D.N.Y. 1937).

11

That subsection provides that if there is an objection to claim (which there is not in this case), the court may allow a claim except to the extent that "such claim is unenforceable against the debtor or property of the debtor under any agreement or applicable law for a reason other than because such claim is contingent or unliquidated." The factual basis for Debtor's argument is the Bond documents and the Kansas IRB financing arrangement, under which the City owns the facility, Debtor pays rent to the City, and the Indenture Trustee, not Debtor, indirectly makes payments to the bondholders. But this interpretation of the transaction is diametrically opposed to the interpretation of the transaction underlying Debtor's plan. It relies on cases which hold that for purposes of bankruptcy, a Kansas IRB transaction is a secured transaction, such that the bondholders are creditors of Debtor. Debtor cannot not have it both ways. Under Debtor's plan, the bondholders have claims against Debtor. Consequently, they are entitled to vote.

The ruling that bondholders are entitled to vote requires refinement. Bondholders could be interpreted to mean only record bondholders, but record bondholders are different from beneficial owners of interests in the Bonds.[33]

---

[33] Publically traded bonds, such as the Bonds in this case, "generally are held in three layers of ownership."Jason A. Cohen, Melissa Jacoby, & Jane Sullivan, *Soliciting Bondholders Pre-Petition: Understanding the Basics*, 22 Am. Bankr. L.J. 28, 28 (Dec./Jan. 2004) (hereinafter *Soliciting Bondholders*). The first layer is the Depository Trust Company ("DTC"), denominated in this case as Cede & Co., the

12

Case 20-20786    Doc# 185    Filed 12/14/20    Page 12 of 17

The Continuing Disclosure Agreement for the IRB transaction defines beneficial owner to mean "any registered owner of any Bonds which (a) has the power, directly or indirectly, to vote or consent with respect to, or dispose or ownership, of any Bonds (including persons holding Bonds through nominees, depositories or other intermediaries), or (b) is treated as the owner of any Bonds for federal income tax purposes."[34] "Because the beneficial holder will receive the benefits of any plan distribution, it is the beneficial holder, not the holder of record, who has the claim and the right to payment" and is entitled to vote to accept or reject a debtor's plan.[35]

The Court holds that the beneficial owners of the Bonds, not the Indenture Trustee, are entitled to vote on Debtor's reorganization plan.

## B. Debtor, not the Indenture Trustee, must Notify the Beneficial Owners of the Plan and the Right to Vote.

Debtor argues that various provisions of the Bond documents shift the burden of noticing the beneficial owners to the Indenture Trustee. In

---

second layer is the record bondholders, and the third layer is the beneficial owners.

[34] Doc. 142, 138.

[35] *Soliciting Bondholders, supra* note 33, at 28 (quoting *In re Pioneer Finance Corp.*, 246 B.R. 626, 633 (Bankr. D. Nev. 2000)). Rule 3017(e), applicable in Chapter 11 cases except those under Subchapter V, provides that at the hearing on the disclosure statement, the court shall "consider the procedures for transmitting the document and information required by subdivision (d) . . . to beneficial holders of . . bonds," not the record owners of bonds.

13

particular, Debtor argues, because the Indenture Trustee under the Trust Indenture must maintain a Bond Register and registration books for the purpose of payment, it is required to have the names and addresses of the beneficial owners. From this, it submits that the Indenture Trustee must give the beneficial owners notice of the bankruptcy plan.

Debtor's construction of the Trust Indenture is not correct. First, as a matter of fact, it is undisputed that the Indenture Trustee does not actually have the names and addresses of the beneficial owners of the Bonds. Further, the provisions on which the Debtor relies are not applicable. The Bond documents provide the Bonds shall be in book-entry form, only registered in the name of Cede & Co., that payments and communications to the bondholders shall be made to Cede & Co., and the provisions of the Trust Indenture regarding payment and notices apply only if the book-entry system is terminated. Specifically, the Official Statement provides:

> The Series 2011A Bonds will be issued as fully registered bonds in book-entry only form . . .
> The Series 2011A Bonds, when issued, will be registered in the name of Cede & C., as nominee for DTC. Payment of the principal of, premium, if any, and interest on each Series 2011A Bond will be made, and notices and other communications to Bondowners will be given, directly to DTC or its nominee, Cede & Co., by the Trustee. . . .
> If the book-entry system is discontinued, payment of principal of, premium, if any, and interest on the

14

> Series 2011A Bonds will be made and such notices and communications will be given as described in the Indenture.[36]

The Court has not been advised that the book-entry system for the Bonds has been discontinued; payments and notices are therefore sent to "DTC,[37] or its nominee, Cede & Co.," which is the record holder of the Bonds. Cede & Co. makes payments to the Beneficial Owners. Thus, the Indenture Trustee is not required to have the contact information for the holders of beneficial interests in the Bonds.

Likewise, Debtor's alternative argument, based upon the Indenture Trustee's duties as dissemination agent, is flawed. For the purpose of complying with 12 C.F.R. § 240.15c2-12, issued by the Securities and Exchange Commission regarding municipal securities disclosures, the Continuing Disclosure Agreement[38] designates CoreFirst Bank & Trust, also serving as the Indenture Trustee, as the dissemination agent.[39] As

---

[36] Doc. 142, 12-13.

[37] DTC is the Depository Trust Company. DTC was "created to reduce costs and provide clearing and settlement efficiencies by immobilizing securities and making 'book-entry' changes to ownership of securities." The Depository Trust Company, https://www.dtcc.com/about/businesses-and-subsidiaries/dtc (last visited Dec. 14, 2020).

[38] Doc. 142, 138-149.

[39] *Id*. 139.

dissemination agent, CoreFirst has the duty to post notices to the Electronic Municipal Market Access system, the EMMA system. The EMMA website was established to "increase transparency of the municipal securities market by providing free public access to municipal securities documents and data. EMMA provides investors, state and local governments and other market participants with key information about individual municipal bonds as well as tools to assess bond prices and market trends."[40] Examples of the required information are annual financial statements and notices of payment delinquencies, modification of rights of security holders, and bankruptcy, insolvency, receivership or similar event of the obligated person. The EMMA system has nothing to do with notice and voting in bankruptcy proceedings. Debtor's obligation to provide notice to the holders of beneficial interests in the Bonds is not satisfied by CoreFirst's fulfilling its duties as dissemination agent.

The Court therefore rejects Debtor's arguments that the Indenture Trustee has the duty to provide the holders of beneficial interests in the Bonds with notice of Debtor's plan and their right to vote to accept or reject the

---

[40] EMMA Electronic Municipal Market Access, https://emma.msrb.org/Home/GettingStarted (last visited Dec. 14, 2020).

plan.[41] Debtor has that duty, just as it would in a bankruptcy where secured debt arose other than from obligations under IRB Bonds.

### III. Conclusion

For the foregoing reasons the Court denies Debtor's request that the Court determine that notice to the Indenture Trustee provides adequate notice of Debtor's plan and the opportunity to vote to the holders of beneficial interests in the Bonds. Debtor must undertake providing notice, including a copy of the plan and a ballot, to the beneficial owners of the Bonds.

**It is so ordered.**

###

---

[41] To properly solicit bondholders, a debtor "must structure a soliciting process that uses the record-holders as conduits to transmit" the solicitation materials to the beneficial owners. *Soliciting Bondholders,* supra note 33, at 28.