# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re: The Young Men's Christian Association
     of Topeka, Kansas,

                                                                     Case No. 20-20786-11

    Debtor.

## United States Trustee's Motion to Dismiss

Under 11 U.S.C. § 1112(b), the United States Trustee moves the Court to dismiss this case for cause. The Court faces only one issue:

> Cause exists if there is substantial or continuing loss to the estate and no reasonable likelihood of rehabilitation. Here, the YMCA of Topeka continues to hemorrhage cash in bankruptcy, and it appears to have abandoned its plan of reorganization. Does cause exist?

The answer is yes. Bankruptcy has not helped the YMCA stanch the bleeding; its net losses since the petition date exceed $420,000. And although it has filed a plan of reorganization, the YMCA has done little to advance that plan since the Court ruled that the debtor could not prevent individual bondholders from voting. Nearly a year after launching under the streamlined provisions of subchapter V of chapter 11, the case is adrift and taking on more water by the day. Cause exists, and the Court should dismiss the case.

## Background

Before bankruptcy, the YMCA of Topeka operated a not-for-profit business offering several recreational, educational, and social services. In 2000, the city of Topeka issued bonds to finance the construction of the YMCA's 38,000-square-foot facility; in 2011, it refunded and redeemed the 2000 issuance with a new round of more than $7 million in bonds. Under a lease arrangement with the city, the YMCA was obligated to make regular payments to cover payments on the bonds.

From 2016 to 2019, amid increased competition and the debtor's closure of its other facilities, the YMCA's annual revenue plummeted nearly 50 percent. On May 21, 2020, the YMCA filed its petition for relief under subchapter V of chapter 11.[1] Its schedules listed CoreFirst Bank, the bond trustee, with a claim of $5.2 million partially secured by the YMCA's facility—which the debtor valued at about $1.6 million, based on a 2019 appraisal that the YMCA commissioned.[2]

---

[1] Doc. #1.
[2] *See id.* at 15 ln. 2.1.

On August 18, the YMCA filed its plan of reorganization. The plan proposed to pay bondholders the appraised value over 25 years at 5% interest, with the unsecured balance to be paid proportionally with all other unsecured claims.[3] The YMCA served the plan on CoreFirst as trustee, but not those with interests in the bonds.[4] After one bondholder gave notice to the YMCA's counsel that it expected to vote on the plan, the YMCA filed a motion seeking a determination that notice to CoreFirst as trustee provided the beneficial owners with adequate notice and opportunity to vote.[5] And in an opinion and order entered December 14, this Court denied that request, instructing the YMCA to provide each beneficial owner with a copy of the plan and a ballot.[6] Soon after, the YMCA filed an application to employ Globic Advisors as balloting agent for the plan;[7] the Court approved that employment on January 29, 2021.[8]

---

[3] Doc. #101 at 25, 26.

[4] *See* Doc. #107.

[5] Doc. #118.

[6] Doc. #184.

[7] Doc. #188.

[8] Doc. #192.

On March 18, the YMCA filed a status report underscoring the debtor's dire circumstances.[9] Among other things, it disclosed:

- Unsuccessful attempts to court support from a potential benefactor and to partner with the YMCA of Wichita;[10]
- The replacement of the debtor's CEO with a turnaround specialist;[11] and
- A financial summary showing that from the case's inception in May 2020 through February 2021, the YMCA had receipts of $1,519,003.20 and disbursements of $1,876,571.57, for a net loss of $357,568.37.[12]

A status hearing was set for April 9. Before that hearing, counsel for the U.S. Trustee contacted the principal for Globic Advisors, who was surprised to learn that Globic's employment had been approved more than two months prior. YMCA's counsel acknowledged at the hearing that the YMCA had not directed Globic to proceed with balloting and asked the Court to give the debtor until July 1 to either file an amended plan or a motion to dismiss or convert the case to chapter 7.

---

[9] Doc. #196.

[10] *Id.* at 2.

[11] *Id.*

[12] *Id.* at 6.

On April 21, 2021, the YMCA filed its operating report for March, showing a loss of $62,638.58 for the month.[13] That brings the YMCA's net loss since May 2020 to $420,206.75.

The prospects of the YMCA's rehabilitation appear hopelessly dim. The U.S. Trustee respectfully asserts that because of a deepening financial morass and a plan stuck in limbo, the proper outcome is dismissal, and the time is now.

## Argument and Authorities

Section 1112 of the Bankruptcy Code governs the conversion or dismissal of a chapter 11 case, and "is intended to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation."[14] It requires a court, upon a finding of cause, to convert a chapter 11 case to chapter 7 or to dismiss the case.[15]

---

[13] Doc. #206.

[14] *Lynch v. Bernard*, 590 B.R. 30, 35 (E.D.N.Y. 2018) (citing *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (S.D.N.Y. 1995)).

[15] 11 U.S.C. § 1112(b)(1).

The statute itself lists several grounds as constituting cause, but the list is not exhaustive.[16] A court may consider other grounds as they arise and may use its equitable powers to reach an appropriate result.[17] Indeed, while "cause" is not specifically defined anywhere in the Bankruptcy Code, courts have interpreted it flexibly to include "any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process."[18]

## A. Cause exists for substantial or continuing loss to the estate and lack of a reasonable likelihood of rehabilitation.

Under § 1112(b)(4)(A), a court must convert or dismiss a case when there is continuing loss to or diminution of the estate and an absence of a reasonable likelihood of rehabilitation. The two components that courts test are (1) whether, after the commencement of the case, the debtor continues to experience a negative cash flow or declining asset values; and (2) whether there is any reasonable

---

[16] *Id.* § 1112(b)(4).

[17] *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *21 (Bankr. D. Kan. Dec. 21, 2015).

[18] *In re Morris*, 155 B.R. 422, 426 (Bankr. W.D. Tex. 1993) (citing *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986)).

6

likelihood that the debtor or some other party will be able to stem the debtor's losses and place the enterprise back on a solid financial footing within a reasonable amount of time.[19]

Here, that test does not balance in the YMCA's favor. Through 11 months in bankruptcy, the YMCA has suffered a net loss of $420,206.75. The conditions that prompted it to file for bankruptcy in the first place remain unabated. It has identified no benefactor or partner to bring any measure of financial stability to its operations. Meanwhile, its plan is hopelessly stuck. And the YMCA's best chance to get the plan confirmed—by cramming down the bondholders while circumventing their votes—is no longer an option, as the YMCA appears to have recognized in its forbearance against balloting. Nearly a year since filing its petition, the YMCA is stalled in subchapter V, a poor fit for a system designed to proceed on a fast track.

The hard truth is that the YMCA no longer appears to be a viable business. Cause for dismissal exists under § 1112(b)(4)(A).

---

[19] *In re Western States, Inc.*, No. 17-20041, 2018 Bankr. LEXIS 247, at *13 (Bankr. D. Wyo. Jan. 30, 2018) (citations omitted).

## B. Dismissal is the appropriate remedy.

Because cause exists, this Court must convert or dismiss the case. The choice hinges on the best interests of creditors and the estate. Although the Code does not define it, the standard "implies a balancing test to be applied through case-by-case analysis."[20]

Dismissal is the most appropriate option here. Conversion would saddle any chapter 7 trustee with unnecessary liability for a defunct corporate debtor. Aside from the bondholders, whose claim is partially secured by the debtor's facility, there are only seven other creditors, most of them with minimal unsecured claims. There is little that a chapter 7 could achieve that a windup outside of bankruptcy could not, and for that reason the Court should find that dismissal is the most suitable choice.

## Conclusion

Any momentum that existed when the YMCA filed its petition is gone. And the case has not merely stalled; it is sinking. The business has continued to run deeply in the red, with little prospect of a

---

[20] *In re Neighbors*, No. 11-21003, 2015 Bankr. LEXIS 4308, at *28 (Bankr. D. Kan. Dec. 21, 2015) (citations omitted).

confirmable plan on the horizon. Although the YMCA has long served a salutary mission, its bankruptcy no longer serves a purpose. Under § 1112(b)(4)(A), this Court should dismiss the case for substantial or continuing loss to the estate and absence of a reasonable likelihood of rehabilitation.

ILENE J. LASHINSKY,
UNITED STATES TRUSTEE

By: *Christopher T. Borniger*, No. 24692
301 N. Main St., Suite 1150
Wichita, KS 67202
316-269-6216 (phone)
316-269-6182 (fax)
Christopher.T.Borniger@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on April 22, 2021, a true and correct copy of this **Motion to Dismiss** was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in this case through the CM/ECF system.

I further certify that on April 22, 2021, I caused a true and correct copy of the foregoing to be sent by U.S. Mail, first class, postage prepaid, to all creditors listed on the matrix for this case, and to:

 The Young Men's Christian Association
  of Topeka, Kansas
 3635 SW Chelsea Drive
 Topeka, KS 66614

       By: *Christopher T. Borniger*